Filed 9/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re UBER TECHNOLOGIES WAGE AND HOUR CASES. | A166355<br><br>(San Francisco County Super. Ct. No. CJC-21-005179; J.C.C.P. No. 5179) |

In these coordinated proceedings, defendants Uber and Lyft[1] appeal after the trial court denied their motions to compel arbitration of claims brought against them in civil enforcement actions by the People of the State of California (the People)[2] and by the Labor Commissioner through the Division of Labor Standards Enforcement (DLSE).[3]  We conclude the court correctly denied the motions because the People and the Labor Commissioner

---

[1] The defendants are (1) Uber Technologies, Inc., and certain of its affiliated entities (collectively, Uber), and (2) Lyft, Inc. (Lyft).

[2] The Attorney General of California, joined by city attorneys of the cities of Los Angeles, San Diego, and San Francisco, brought the action on behalf of the People.

[3] The DLSE is a division within the Department of Industrial Relations.  (Lab. Code, §§ 21, 79.)  We will use the terms DLSE and Labor Commissioner interchangeably.

1

are not parties to the arbitration agreements invoked by Uber and Lyft. We therefore affirm.

## I. BACKGROUND

### A. *The People's and the Labor Commissioner's Actions Against Uber and Lyft*

In May 2020, the People filed this action. In their operative complaint, the People allege Uber and Lyft violated the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL) by misclassifying their California ride-share and delivery drivers as independent contractors rather than employees, thus depriving them of wages and benefits associated with employee status.[4] The People allege the misclassification harms workers, competitors, and the public. The People seek injunctive relief, civil penalties, and restitution under the UCL. (Bus. & Prof. Code, §§ 17203, 17204, 17206.) The People also seek injunctive relief under the statutory scheme established by Assembly Bill No. 5 (2019–2020 Reg. Sess.) (Assembly Bill 5), specifically Labor Code section 2786,[5] which authorizes such relief to prevent misclassification of employees as independent contractors.

The People sought, and the trial court entered, a preliminary injunction prohibiting Uber and Lyft from misclassifying their drivers as independent contractors in violation of Assembly Bill 5. (*People v. Uber Technologies, Inc., supra,* 56 Cal.App.5th at pp. 281–282.) We affirmed in an October 2020 opinion. (*Id.* at p. 316.) Following the passage of Proposition 22, which

---

[4] We discussed the People's claims and other relevant background more fully in *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 273, 274–282.

[5] The injunctive relief provision of Assembly Bill 5 was originally codified as Labor Code section 2750.3, subdivision (j) (Stats. 2019, ch. 296, § 2) and was later transferred to section 2786 (Stats. 2020, ch. 38, §§ 1–2). (See *People v. Uber Technologies, Inc., supra,* 56 Cal.App.5th at p. 274, fn. 3.)

altered the standards for determining whether app-based drivers are independent contractors (Bus. & Prof. Code, § 7451), the People and Uber and Lyft stipulated to dissolve the preliminary injunction, which had been stayed since it was entered. The People's operative first amended and supplemental complaint clarifies that the People seek injunctive relief to the extent Proposition 22 is unconstitutional or otherwise invalid.[6]

In August 2020, the Labor Commissioner filed separate actions against Uber and Lyft, pursuant to her enforcement authority under the Labor Code. (E.g., Lab. Code, §§ 61, 90.5, 95, 98.3, subd. (b).) The Labor Commissioner alleges Uber and Lyft have misclassified drivers as independent contractors and have thus violated certain Labor Code provisions and wage orders. The Labor Commissioner seeks injunctive relief, civil penalties payable to the state, and unpaid wages and other amounts alleged to be due to Uber's and Lyft's drivers, such as unreimbursed business expenses.[7]

---

[6] The validity of Proposition 22 under the state constitution is a question now pending before the California Supreme Court. (*Castellanos v. State of California* (2023) 89 Cal.App.5th 131, review granted June 28, 2023, S279622.)

[7] As noted, the People and the Labor Commissioner filed their actions pursuant to statutory authority as public enforcement officials. (Bus. & Prof. Code, §§ 17203, 17204, 17206; Lab. Code, §§ 2786, 61, 90.5, 95, 98.3, subd. (b).) Their actions are not private attorney general actions, i.e., they are not actions "brought by an aggrieved employee on behalf of himself or herself and other current or former employees" as authorized by the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA). (Lab. Code, § 2699, subd. (a).) They are direct enforcement actions by public prosecutors acting under specific statutory grants of prosecutorial authority.

The People's action and the Labor Commissioner's actions were coordinated (along with other cases not involved in this appeal)[8] as part of *Uber Technologies Wage and Hour Cases*.

**B.** ***Uber's and Lyft's Motions To Compel Arbitration Based on Their Arbitration Agreements With Drivers***

As we noted in *People v. Uber Technologies, Inc.*, *supra*, 56 Cal.App.5th at p. 312, fn. 24, foreshadowing this appeal, Uber and Lyft filed motions to compel arbitration in the People's action; they also filed similar motions in the Labor Commissioner's actions. Uber and Lyft sought to require arbitration of those actions to the extent they seek remedies that Uber and Lyft characterize as "driver-specific" or " 'individualized' " relief, such as restitution under the UCL and unpaid wages under the Labor Code.

Uber's and Lyft's motions did not seek to compel arbitration of the People's and the Labor Commissioner's requests for civil penalties and injunctive relief, but they nonetheless asked the court to stay those portions of the actions pending completion of any driver arbitrations. Finally, as an alternative to their requests to compel arbitration, Uber and Lyft asked the court to strike the People's and the Labor Commissioner's requests for restitution and certain other relief.

In their motions, Uber and Lyft relied on arbitration agreements they entered into with drivers. The agreements require drivers to arbitrate on an individual basis most disputes arising from their relationship with Uber or Lyft. The People and the Labor Commissioner are not parties to the agreements.

---

[8] According to the parties' briefs in this appeal, those other cases (which also allege misclassification of employees as independent contractors) were brought by private parties under PAGA.

4

Following coordination, the parties filed additional briefing pertaining to the motions, and the trial court heard argument on August 26, 2022. On September 1, 2022, the court entered an order denying Uber's and Lyft's motions.

Uber and Lyft appealed.

## II. DISCUSSION

Uber and Lyft contend the arbitration agreements they entered into with their drivers require that portions of the civil enforcement actions brought by the People and the Labor Commissioner be compelled to arbitration. If this court orders arbitration, they argue, the remaining portions of the People's and the Labor Commissioner's actions should be stayed. We conclude, as the trial court did, that there is no basis to compel arbitration.

### A. *Standard of Review*

"Whether an arbitration agreement binds a third party is a legal question we review de novo." (*Department of Fair Employment and Housing v. Cisco Systems, Inc.* (2022) 82 Cal.App.5th 93, 99 (*Cisco*).)

### B. *The People and the Labor Commissioner Are Not Bound by Uber's and Lyft's Arbitration Agreements with Their Drivers*

Both the federal government and California have strong public policies " 'in favor of arbitration as an expeditious and cost-effective way of resolving disputes.' " (*People v. Maplebear Inc.* (2022) 81 Cal.App.5th 923, 930 (*Maplebear*).) But "[e]ven though the ' " 'law favors contracts for arbitration of disputes between parties' [citation], ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' " ' " (*Id.* at p. 931.)

The trial court correctly concluded there is no basis to compel arbitration here because the People and the Labor Commissioner are not

5

parties to the arbitration agreements Uber and Lyft entered into with their drivers.  Uber and Lyft contend arbitration nevertheless should be compelled on the basis of either (1) federal preemption or (2) equitable estoppel.  We disagree.[9]

### 1. Preemption

Uber and Lyft argue the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) precludes the People and the Labor Commissioner from pursuing in court some of the types of relief they seek in their enforcement actions, including restitution under the UCL and unpaid wages and business expenses of drivers under the Labor Code.  Characterizing these forms of relief as "individualized" or "driver-specific," they argue that, because such relief may benefit individual drivers, any claim seeking it "belong[s]" to the drivers (and the People and the Labor Commissioner only "stand[] in the [drivers'] shoes," while the drivers are the "real parties in interest").  Thus, they conclude, those portions of the People's and the Labor Commissioner's actions must be compelled to arbitration.  We disagree.

The United States Supreme Court has emphasized that, while the FAA embodies a strong federal policy in favor of enforcing parties' agreements to arbitrate, that policy is founded on the parties' consent, and there is no policy in favor of requiring arbitration of disputes the parties have not agreed to arbitrate.  (*Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. __, __

---

[9] Because we hold the People and the Labor Commissioner are not bound by the arbitration agreements between Uber and Lyft and their drivers, we need not address (1) the Labor Commissioner's argument that Uber and Lyft have not provided sufficient evidence of such agreements because they produced no signed agreements, or (2) defendants' contentions that the agreements are valid and binding as between the parties who entered them.  We will assume for purposes of this opinion that the arbitration agreements bind drivers who entered them.

6

[142 S.Ct. 1906, 1918] (*Viking River*) ["the 'first principle' of our FAA jurisprudence" is "that '[a]rbitration is strictly "a matter of consent" ' "]; *id.* at p. __ [142 S.Ct. at p. 1917]; *E.E.O.C. v. Waffle House, Inc.* (2002) 534 U.S. 279, 294 (*Waffle House*) ["Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' [citation], we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement."].)

" ' 'Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law." [Citations.] "The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." ' [Citation.] 'Because arbitration is a matter of contract, generally " 'one must be a party to an arbitration agreement to be bound by it or invoke it.' " ' [Citation.] 'However, both California and federal courts have recognized limited exceptions to this rule, allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, a dispute arising within the scope of that agreement.' [Citation.] ' " 'As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third party beneficiary." ' " ' " (*Maplebear*, *supra*, 81 Cal.App.5th at pp. 931–932.)

Here, as noted, the People and the Labor Commissioner are not parties to the arbitration agreements at issue. And none of the above theories supports compelling their claims to arbitration. We reject Uber's and Lyft's suggestion that the People and the Labor Commissioner should be bound because they allegedly are mere proxies for Uber's and Lyft's drivers. (See *Cisco*, *supra*, 82 Cal.App.5th at p. 99 [addressing a similar claim; noting the

7

"proxy" theory was "along [the] lines" of the assumption, agency, and alter ego theories].)

The relevant statutory schemes expressly authorize the People and the Labor Commissioner to bring the claims (and seek the relief) at issue here. (Bus. & Prof. Code, §§ 17203, 17204, 17206 [authority for Attorney General and other public prosecutors to sue in the name of the People under the UCL]; Lab. Code, § 2786 [authority under Assembly Bill 5]; *id.*, §§ 61, 90.5, 95, 98.3, subd. (b) [Labor Commissioner's authority].) The public officials who brought these actions do not derive their authority from individual drivers but from their independent statutory authority to bring civil enforcement actions, and, as we discuss further below, there is no basis for binding them to arbitration agreements Uber and Lyft entered with drivers.

   a. Waffle House *Establishes the Drivers' Arbitration Agreements Do Not Bar the People and the Labor Commissioner from Seeking Judicial Relief*

In *Waffle House*, the United States Supreme Court held that the federal Equal Employment Opportunity Commission (EEOC) is not bound by employee arbitration agreements because it has the ability to determine whether to file suit and what relief to pursue. (*Waffle House, supra*, 534 U.S. at pp. 291, 282, 285, 297–298.) An employee's agreement to arbitrate certain claims does not bar the EEOC from pursuing "victim-specific judicial relief" (as well as injunctive relief) in its own action. (*Id.* at pp. 282, 285, 297–298.) The high court rejected arguments that the EEOC's claims in this setting are "derivative" and that the EEOC is a "proxy for the employee." (*Id.* at pp. 297–298.)

Recent decisions by California appellate courts have followed *Waffle House*, holding that public agencies bringing enforcement actions as authorized by statute are not bound by arbitration agreements between

8

private parties.  In *Maplebear*, a case very similar to this one, the San Diego City Attorney brought an enforcement action under the UCL on behalf of the People, alleging Instacart misclassified its shoppers as independent contractors.  (*Maplebear*, *supra,* 81 Cal.App.5th at p. 926.)  The trial court denied Instacart's motion to compel arbitration, and the appellate court affirmed, holding that, under *Waffle House*, arbitration agreements between Instacart and its shoppers were not binding on the People.  (*Maplebear*, at pp. 926–927, 935.)

The *Maplebear* court rejected Instacart's contention that the FAA supported a contrary result because the People allegedly were "deputized" by the shoppers.  (*Maplebear*, *supra*, 81 Cal.App.5th at pp. 934–935.)  Instead, the court held, the City of San Diego was acting in its own law enforcement capacity to seek relief under the UCL.  (*Maplebear,* at p. 934.)  The court explained that "the FAA is not concerned with the ability of the State of California to prosecute violations of the Labor Code and to seek civil penalties and related relief for those violations under the UCL.  Contrary to Instacart's assertion, the Shoppers are not the real party in interest in this case, the People are." (*Id.* at p. 935.)

Similarly, in *Cisco*, *supra*, 82 Cal.App.5th at p. 97, the appellate court addressed whether the Department of Fair Employment and Housing (now named the Civil Rights Department) could be "compelled to arbitrate an employment discrimination lawsuit when the affected employee agreed to resolve disputes with the employer through arbitration."  Affirming the trial court's denial of a motion to compel arbitration, the appellate court held the Department could not be required to arbitrate because it did not agree to do so.  (*Ibid.*)  The *Cisco* court rejected the employer's claim that the Department

9

should be bound because it was a "proxy" for the employee and was "not acting independently." (*Id.* at p. 99.)

Instead, the *Cisco* court explained, the Department acts independently and pursuant to express statutory authority when it sues for violations of the Fair Employment and Housing Act. (*Cisco*, *supra*, 82 Cal.App.5th at pp. 99–100, 103–104, citing *Waffle House*, *supra*, 534 U.S. at p. 291.) "As an independent party, the Department cannot be compelled to arbitrate under an agreement it has not entered." (*Cisco,* at p. 104; see *Crestwood Behavioral Health, Inc. v. Lacy* (2021) 70 Cal.App.5th 560, 581–585 [recognizing, following *Waffle House*, that the Labor Commissioner has independent statutory authority to investigate and obtain victim-specific relief under the Labor Code and to protect the public interest, regardless of whether an individual employee's claim has been compelled to arbitration].)

We agree with the analysis in *Maplebear* and *Cisco.* We hold that, under *Waffle House*, the People and the Labor Commissioner are not bound by arbitration agreements they did not enter. The FAA does not preclude them from exercising their statutory authority to enforce the law and to seek appropriate remedies, including injunctive relief and civil penalties, as well as restitution and other "victim-specific judicial relief." (*Waffle House*, *supra*, 534 U.S. at p. 282; *id.* at pp. 285, 297–298.) The trial court correctly so held. As we discuss below, Uber's and Lyft's arguments to the contrary are not persuasive.

b. Viking River *Provides No Basis for Reversal*

Uber and Lyft contend the high court's decision in *Viking River* requires that the People and the Labor Commissioner be bound to Uber's and Lyft's arbitration agreements with their drivers. We disagree. *Viking River* involved a different issue—whether California's rule invalidating waivers of representative claims under PAGA is preempted by federal law. (*Viking*

10

*River, supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1913]; see *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1113–1114 [discussing *Viking River*].) In this case, the actions brought by the People and the Labor Commissioner are not private attorney general actions under PAGA. The PAGA plaintiff in *Viking River*, a former employee of the defendant, had signed an agreement to arbitrate any dispute arising out of her employment (*Viking River,* at p. __ [142 S.Ct. at pp. 1915–1916]), and the high court did not address any claim that a plaintiff who was a nonsignatory to the agreement should be bound.

Uber and Lyft dwell on language in a footnote in *Viking River* (footnote 4), in which the high court stated that, "[a]lthough the terms of [9 U.S.C.] § 2 limit the FAA's enforcement mandate to agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship,[10] disputes resolved in PAGA actions satisfy this requirement. The contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship. [Citation.] And regardless of whether a PAGA action is in some sense also a dispute between an employer and the State, nothing in the FAA categorically exempts claims belonging to sovereigns from the scope of [9 U.S.C.] § 2." (*Viking River, supra*, 596 U.S. at p. __, fn. 4 [142 S.Ct. at p. 1919, fn. 4].) This passage, Uber and Lyft tell us, supports their effort to bind the People and the Labor Commissioner to arbitration agreements with their drivers.

---

[10] Section 2 of the FAA (9 U.S.C. § 2) states in relevant part: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ."

11

We disagree. In our view, the cited passage establishes that, when an employee who has agreed to arbitrate claims against an employer brings a PAGA action, then (even if that action could be said to be a dispute between an employer and the state) the FAA requires that the employee submit to arbitration any claim covered by the agreement, because the claim arises out of the contractual relationship between the parties. (*Viking River*, *supra*, 596 U.S. at p. __, fn. 4 [142 S.Ct. at p. 1919, fn. 4]; *id.* at p. __ [142 S.Ct. at pp. 1915–1916].) As we read it, the passage addresses *which claims* (brought by a plaintiff who was a signatory to an arbitration agreement) are to be submitted to arbitration pursuant to the FAA's mandate. (*Viking River*, at p. __, fn. 4 [142 S.Ct. at p. 1919, fn. 4].) The *Viking River* court did not cite *Waffle House* and did not state it was altering or limiting the holding in that case. And nowhere in footnote 4 or elsewhere in the *Viking River* opinion did the high court state it was addressing or expanding the category of *litigants* who are covered by the FAA's mandate to include public enforcement agencies who did not agree to arbitrate any claims against the employer.

Indeed, as noted above, far from suggesting parties should be bound to arbitrate where they have not agreed to do so, the *Viking River* court emphasized that "the 'first principle' of our FAA jurisprudence" is "that '[a]rbitration is strictly "a matter of consent." ' " (*Id.* at p. __ [142 S.Ct. at p. 1918]; accord, *Cisco*, supra, 82 Cal.App.5th at p. 103 [noting that *Viking River* "reaffirmed . . . that arbitration is a matter of consent and a party cannot be compelled to arbitrate absent a contractual basis for concluding the party agreed to do so"].) We reject Uber's and Lyft's argument that *Viking River* supports reversal here.

The other cases cited by Uber and Lyft in support of their preemption argument similarly do not require arbitration by a public enforcement agency

12

that is not a party to an arbitration agreement.  Instead, the cited cases involve plaintiffs who agreed to arbitrate certain types of disputes, and the issue raised on appeal was which claims or relief pursued by those plaintiffs were subject to arbitration in light of their agreements and the FAA.  (E.g., *Epic Systems Corp. v. Lewis* (2018) 584 U.S. __, __ [138 S.Ct. 1612, 1619–1621] [employee agreed to arbitrate employment-related disputes on an individual basis; FAA required enforcing this agreement and precluding employee's effort to pursue claims in court as representative of a class]; *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 309–310, 317–318 [consumer-plaintiff was alleged to be bound by arbitration agreement; his request for restitution under the UCL was arbitrable]; *Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1235, 1239, 1246 [employee-plaintiff agreed to arbitrate employment-related claims and later brought PAGA action; appellate court held that, under then-applicable *Iskanian*[11] framework, the employee's claims for unpaid wages for himself and other employees "retain their private nature and continue to be covered by the" FAA].)  Uber and Lyft cite no case holding a state government body or official that did not agree to arbitration can be barred from enforcing the law in court based on an arbitration agreement entered by others.

Defendants' reliance on *Preston v. Ferrer* (2008) 552 U.S. 346 is also misplaced.  *Preston* held that, "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA."  (*Id.* at pp. 349–350.)  The *Preston* court distinguished *Waffle House*, noting that

---

[11] *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), overruled in part by *Viking River*, *supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1924].

in that case, "the Court addressed the role of an agency, not as adjudicator but as prosecutor, pursuing an enforcement action in its own name . . . ." (*Preston*, at p. 359.) Here, of course, the People and the Labor Commissioner are acting as prosecutors, not adjudicators. *Waffle House*, not *Preston*, controls.

Similarly unpersuasive is Uber's and Lyft's reliance on the statement in *Department of Industrial Relations v. Continental Casualty Co.* (1996) 52 Cal.App.4th Supp. 1, 3, that the Legislature, through Labor Code provisions authorizing the DLSE to collect wages or benefits on behalf of a worker without assignment, "intended to put the DLSE right into the shoes of the worker for the purpose of such wage litigation." Based on this conclusion, the appellate division in *Department of Industrial Relations* held that the DLSE (like a wage earner) was exempt from a statutory notice requirement. (*Ibid.*) The court addressed no question of arbitrability and did not suggest the DLSE or other public agency is bound to an arbitration agreement it did not enter. We decline to read the court's brief, general statement as authority for a proposition it did not consider.

Nor do *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475 and *Department of Fair Employment and Housing v. Lucent Technologies, Inc.* (9th Cir. 2011) 642 F.3d 728, two other cases cited by defendants, persuade us reversal is warranted. Those decisions held, in contexts unrelated to arbitration, that the legislative conferral of standing to sue does not necessarily establish the named plaintiff is the real party in interest. (*Howitson*, at pp. 488–489, 491–492 [in PAGA action, the state is the real party in interest, although an aggrieved employee has standing to sue; therefore, for purposes of claim preclusion, an employee's individual lawsuit

14

and her later PAGA action were not brought by the same party][12]; *Lucent Technologies*, at p. 738 & fn. 4 [while state statute "support[ed] a finding that California is a real party in interest for the purposes of standing," the statutory language "fail[ed] to render it a real party in the controversy for the purposes of [federal] diversity jurisdiction"].) Neither case addresses any issue relating to arbitrability or holds that a public enforcement agency must arbitrate its claims because the relief it obtains may benefit individuals.

c. *Defendants' Efforts To Distinguish* Waffle House *Are Not Persuasive*

In a separate line of attack, Uber and Lyft contend that *Waffle House* is distinguishable, in part because it involved claims for victim-specific relief brought by a federal agency,[13] and that *Maplebear* and *Cisco* (which applied the *Waffle House* holding to suits by state government actors) are distinguishable or were incorrectly decided. We reject these arguments and hold *Waffle House* applies here.

It is, of course, true that *Waffle House* involved a federal agency (the EEOC) suing under a federal antidiscrimination statute, the Americans with Disabilities Act (ADA). (*Waffle House*, *supra*, 534 U.S. at pp. 282–283.) But in our view, the court's analysis and holding apply here and establish that a government body exercising express statutory authority to seek judicial relief (including "victim-specific" relief) cannot be barred from doing so on the ground the agency is supposedly a mere "proxy" of an individual employee

---

[12] Code of Civil Procedure section 367 ("Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.").

[13] Uber also states *Waffle House* "predates" the high court's "modern arbitration decisions." *Waffle House* has not been overruled, and we will follow it.

who entered an arbitration agreement. (*Id.* at pp. 282, 285, 297–298; accord, *Maplebear*, *supra*, 81 Cal.App.5th at pp. 926–927, 934–935; *Cisco*, *supra*, 82 Cal.App.5th at pp. 99–100, 103–104.) As with the agencies in *Waffle House*, *Maplebear*, and *Cisco*, the People and the Labor Commissioner are not parties to the arbitration agreements invoked in this case, and they may pursue their claims in court.

Uber and Lyft argue the statutory schemes at issue here differ in certain respects from the one in *Waffle House*, including as to whether the government agency has an exclusive right to pursue claims and whether it is bound by the same statute of limitations as a private individual. (*Waffle House*, *supra*, 534 U.S. at pp. 291, 287, 297.) But in our view, the *Waffle House* court's statements on these points do not provide a basis to depart from its holding. Like the EEOC (*id.* at pp. 291–292), the People and the Labor Commissioner decide whether to bring claims within their statutory authority, and their ability to do so does not depend on the consent or approval of individual employees. Despite variations in the statutory schemes at issue, we conclude *Waffle House* applies here. The People and the Labor Commissioner are not acting as proxies for drivers but bringing independent civil enforcement actions, and they are not barred from seeking judicial relief by arbitration agreements they did not enter. (See *id.* at pp. 297–298.)

As to *Maplebear* and *Cisco*, Uber and Lyft contend those cases are distinguishable, in part because the defendants there sought to compel larger portions of the civil enforcement actions to arbitration. But in both cases the relief sought by the public enforcement agencies included restitution or other victim-specific relief (*Maplebear*, *supra*, 81 Cal.App.5th at p. 928; *Cisco*, *supra*, 82 Cal.App.5th at p. 98), and the appellate courts held that no portion

16

of those actions should be compelled to arbitration, because the public prosecutors had not agreed to arbitrate. (*Maplebear*, at pp. 926–927, 935; *Cisco*, at pp. 97, 104.) For the reasons we have discussed, we agree.

> d. *The People's and the Labor Commissioner's Exercise of Their Statutory Law Enforcement Authority Does Not Pose an Obstacle to the FAA*

Uber and Lyft argue that, where state agencies are involved, their pursuit of restitution and other statutory remedies that may benefit individual employees should be held to be preempted because such agency action stands as an "obstacle to the accomplishment of the FAA's objectives." (Citing *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 343, 352.) We do not agree. As discussed, the FAA does not embody a policy in favor of compelling arbitration of disputes in the absence of consent. (*Viking River, supra,* 596 at p. __ [142 S.Ct. at p. 1918]; *Waffle House, supra*, 534 U.S. at p. 294.)

Uber contends the People's and the Labor Commissioner's pursuit of restitution and similar relief in court will interfere with drivers' arbitration agreements because a judgment in the present action could be preclusive of certain issues in future arbitrations, thus causing drivers to "forever lose the ability to bring their claims in the arbitral forum they agreed to." The People dispute Uber's claim that the present action will have preclusive effect in drivers' individual arbitrations. We need not resolve this point. Even if there could be some future preclusive effect on ongoing or future arbitrations, Uber presents no authority requiring that litigation in court by nonparties to an arbitration agreement must be barred whenever it is possible such litigation could affect an arbitration between signatories to an agreement requiring that form of dispute resolution in their private relations.

17

Uber also argues that individual drivers cannot avoid arbitration by assigning or transferring their claims to another individual, and Uber asserts "that is exactly what is happening here." Lyft similarly contends that, if a "third party" such as "a successor in interest, assignee, bankruptcy trustee, or class action representative," sought to pursue "a driver's claim for monetary relief," the driver's arbitration agreement "would control." But as discussed, the People and the Labor Commissioner are pursuing their own statutory claims. They are not assignees or other similarly situated third parties seeking to present claims held by drivers. (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1353 [The "exceptions to the general rule that one must be a party to an arbitration agreement to invoke it or be bound by it 'generally are based on the existence of a relationship between the nonsignatory and the signatory, such as principal and agent or employer and employee, where a sufficient "identity of interest" exists between them.' "].) The People and the Labor Commissioner also are not acting as class representatives as would an employee representing other similarly situated employees. Finally, for the same reason, Uber is incorrect in describing the People and the Labor Commissioner as "nominal part[ies] controlling the litigation of drivers' claims" and as the drivers' "litigation counsel."

Uber suggests in its reply brief that a nonsignatory plaintiff such as the People should be compelled to arbitration without regard to whether the nonsignatory has any relationship with a party to the arbitration agreement, so long as the nonsignatory's claims can be said to arise out of the contract that contains the agreement. In support, Uber cites *Viking River*, *Epic Systems*, and *Concepcion*, but those cases do not support Uber's argument. In each case, the individual plaintiff or plaintiffs bringing a PAGA claim (*Viking River*) or seeking to represent a plaintiff class (*Epic Systems*, *Concepcion*) had

18

entered an arbitration agreement. (*Viking River*, *supra*, 596 U.S. at p. __ [142 S.Ct. at pp. 1915–1916]; *Epic Systems Corp. v. Lewis, supra,* 584 U.S. at p. __ [138 S.Ct. at pp. 1619–1621]; *AT&T Mobility LLC v. Concepcion, supra,* 563 U.S. at p. 336.) As we have discussed, none of these cases holds that public law enforcement officials must arbitrate their statutory claims when they have not agreed to do so and have no preexisting relationship with the parties to the arbitration agreement.

Finally, Lyft asserts that state law should not permit public enforcement agencies to bring claims "on behalf of" individual drivers who entered arbitration agreements, because if that is permissible, then state law could similarly "deputize" a private citizen to bring suit on behalf of a person who has agreed to arbitration, a result that Lyft contends would run afoul of the California Supreme Court's decision in *Iskanian, supra,* 59 Cal.4th 348. That argument is not well taken.

In the relevant passage from *Iskanian* (which Lyft quotes only in part), the court explained that its holding on the PAGA issues raised there "would not permit a state to circumvent the FAA by, for example, deputizing employee A to bring a suit for the individual damages claims of employees B, C, and D. This pursuit of victim-specific relief *by a party to an arbitration agreement* on behalf of *other parties to an arbitration agreement* would be tantamount to a private class action, whatever the designation given by the Legislature." (*Iskanian*, *supra*, 59 Cal.4th at pp. 387–388, italics added.) "Under [the high court's decision in] *Concepcion*, such an action could not be maintained in the face of a class waiver." (*Id.* at p. 388.)

The *Iskanian* court's statement that the state could not designate a party to an arbitration agreement to pursue the individual damages claims of other parties to the agreement has no bearing on the issues presented here.

19

As discussed, the People and the Labor Commissioner are not parties to the arbitration agreements who have been improperly "deputize[d]" to bring suit for other such parties. They are nonparties to the agreements who are suing in their law enforcement capacities and pursuing statutorily authorized remedies. That Lyft can imagine a different scenario that might violate the FAA provides no basis for reversal here.

Underlying Uber's and Lyft's preemption arguments is their assertion that the People's and the Labor Commissioner's claims in these actions (to the extent they seek restitution or other relief that may benefit individual drivers) are really the "drivers' claims" or claims that "belong to drivers." We have rejected this argument. As discussed, the People and the Labor Commissioner are authorized by statute to bring the claims at issue here and to seek the relief they request. The fact some of that relief might benefit individual drivers (or could be sought by individual drivers on their own behalf) does not transform the claims brought here into derivative claims brought by a proxy for the drivers.

### 2. Equitable Estoppel

Uber and Lyft argue that, apart from federal preemption, the People and the Labor Commissioner are bound by the drivers' arbitration agreements based on equitable estoppel. Here, too, we disagree. The trial court correctly held there is no basis for equitable estoppel on this record.

#### a. *Equitable Estoppel Does Not Apply*

As we have discussed, the general rule is that " '[t]he right to arbitration depends on a contract, and a party can be compelled to submit a dispute to arbitration only if the party has agreed in writing to do so.' [Citation.] 'Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement.' "

20

(*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 300 (*Jensen*).) But as also noted above, "there are circumstances under which persons who have not signed an agreement to arbitrate are bound to do so," including " ' "estoppel." ' " (*Ibid.*)

Specifically, "[a] nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she asserts claims that are 'dependent upon, or inextricably intertwined with,' the underlying contractual obligations of the agreement containing the arbitration clause. [Citation.] 'The focus is on the nature of the claims asserted . . . . [Citations.] That the claims are cast in tort rather than contract does not avoid the arbitration clause.' [Citation.] Rather, ' "[t]*he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory . . . is . . . always the* sine qua non *of an appropriate situation for applying equitable estoppel.*" ' [Citation.] '[E]ven if a plaintiff's claims "touch matters" relating to the arbitration agreement, "the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action." ' [Citation.] 'The fundamental point' is that a party is 'not entitled to make use of [a contract containing an arbitration clause] as long as it worked to [his or] her advantage, then attempt to avoid its application in defining the forum in which [his or] her dispute . . . should be resolved.' " (*Jensen, supra,* 18 Cal.App.5th at p. 306; accord, *DMS Services, LLC v. Superior Court*, *supra*, 205 Cal.App.4th at p. 1354 ["The reason for this equitable rule is plain: One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract."].)

The trial court correctly concluded equitable estoppel does not apply here because the People's and the Labor Commissioner's claims are not

21

founded on Uber's and Lyft's contracts with their drivers. Instead, as the court recognized, the People and the Labor Commissioner are seeking to enforce the UCL and the Labor Code and are not seeking to enforce or take advantage of any portion of Uber's and Lyft's contracts with their drivers. Indeed, as the court noted, the People and the Labor Commissioner "take the position that those contracts violate California law requiring Defendants to classify their drivers as employees."

As defendants note, the People's and the Labor Commissioner's complaints refer to certain provisions of the contracts between defendants and their drivers in outlining the nature of their relationship. But referring to the contract is not sufficient; for equitable estoppel to apply, the plaintiff must rely on the contract in asserting its claims. (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 218.) Plaintiffs here seek no relief under the contracts, and their claims do not rely on them.

The cases cited by defendants do not persuade us that equitable estoppel applies. For example, the present case is different from *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239–1240, on which both defendants rely for the principle that a nonsignatory plaintiff may in some instances be bound to arbitrate under principles of equitable estoppel. *JSM Tuscany* involved a group of closely related plaintiffs under common ownership, some of whom were signatories to the contracts that contained the arbitration agreements, and all of whom brought claims that were based on obligations imposed by those contracts. (*Id.* at pp. 1239–1242, 1226 & fn. 2.) Here, there is no preexisting relationship between the People and the Labor Commissioner on the one hand, and the drivers who agreed to

22

arbitrate on the other.[14]  And in any event, as discussed, neither plaintiff presents claims that depend on, or are inextricably intertwined with, the obligations imposed by defendants' contracts with their drivers.  We decline to hold the doctrine of equitable estoppel bars government law enforcement actions in these circumstances.

Nor does *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, also cited by defendants, persuade us it would be inequitable for the People's and the Labor Commissioner's actions to proceed in court.  In *Garcia*, an employee bound by an arbitration agreement with his employer, a staffing company (Real Time), brought statutory wage claims against the staffing agency and the company where the employee had been assigned to work (Pexco), making "no distinction" between them.  (*Id.* at pp. 784–785.)  Because the claims arose out of the plaintiff's employment relationship with Real Time, and the arbitration agreement clearly covered statutory claims against Real Time (*id.* at pp. 786–788), the appellate court held that, "[o]n these facts, it is inequitable for the arbitration about Garcia's assignment with Pexco to proceed with Real Time, while preventing Pexco from participating" (*id.* at

---

[14] See *Jensen*, *supra*, 18 Cal.App.5th at p. 301 (" 'The California cases binding nonsignatories to arbitrate their claims fall into two categories.  In some cases, a nonsignatory was required to arbitrate a claim because a benefit was conferred on the nonsignatory as a result of the contract, making the nonsignatory a third party beneficiary of the arbitration agreement.  In other cases, the nonsignatory was bound to arbitrate the dispute because a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim.' "); see also *JSM Tuscany, LLC v. Superior Court*, *supra*, 193 Cal.App.4th at p. 1240, fn. 20 ("[I]t is difficult to conceive of a situation in which a nonsignatory party can state a valid claim *based on the contract*, without having some legal relationship with a signatory of the contract or being a third party beneficiary of the contract.").

p. 787).  We find no similar inequity here, where the plaintiffs have not agreed to arbitrate with anyone and do not seek an " 'advantage' " (*Jensen, supra*, 18 Cal.App.5th at p. 306) under an employment contract while ignoring its arbitration clause, but instead seek statutory remedies for defendants' allegedly wrongful refusal to treat their drivers as employees.

Finally, in *Machado v. System4 LLC* (2015) 471 Mass. 204, 210, 212–216, 205 [28 N.E.3d 401], cited by defendants, the court held equitable estoppel applied where plaintiff franchisees brought misclassification and other claims against two defendants, one of whom was not a party to the arbitration agreement signed by the plaintiffs.  The court concluded that the franchise agreement was significant to the plaintiffs' claims, and that the plaintiffs had alleged "concerted misconduct" by the defendants.  (*Id.* at pp. 212–216.)  We are not persuaded a similar result is appropriate here.  In addition to the differing factual settings (including that the plaintiffs here are not signatories to any arbitration agreement), we conclude, as discussed, that the misclassification claims asserted in this case are not "dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of" Uber's and Lyft's contracts with their drivers.  (*Goldman v. KPMG, LLP, supra,* 173 Cal.App.4th at p. 218.)

      b. *Application of Equitable Estoppel Is Unwarranted*

We also agree with the trial court that equitable estoppel does not apply here because, under California law, as our Supreme Court has stated, "it is clear 'that neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 316, citing *County of San Diego v. Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826.)  The trial court may

24

have overstated the point a bit in suggesting that, if the People and the Labor Commissioner were forced into arbitration, it "would *nullify* the important public policies underlying the UCL and the Labor Code." (Italics added.) But we do think the result sought by Uber and Lyft here would fundamentally undermine those policies. Semantics aside, we agree with the trial court that the outcome Uber and Lyft urge would "effectively negate" *Waffle House* and the other case law we have discussed above establishing that an arbitration agreement between private parties does not bar a public enforcement agency from seeking judicial relief, including victim-specific relief. Thus, even if the elements of equitable estoppel were otherwise established, we would decline to apply it here.

Uber asserts that only the remedies of injunctive relief and civil penalties serve "a public function," while restitution "is mainly about restoring property to those owed." This argument does not persuade us equitable estoppel should apply here. We note initially that, under the orders sought by defendants, even the People's and the Labor Commissioner's requests for injunctive relief and civil penalties would be stayed pending completion of any ordered arbitrations. But in any event, we do not agree that an effort by public enforcement officials to obtain restitution of money allegedly taken illegally from citizens can be fairly characterized as not serving a public purpose in the context of the equitable estoppel issue raised here. The Legislature decided to include restitution as a remedy obtainable by public prosecutors under the UCL (along with injunctive relief and civil penalties) (Bus. & Prof. Code, §§ 17203, 17204, 17206), and we decline to hold that they actually act as surrogates for private parties when they seek it.

The defendants' reliance on *State of California v. Altus Finance* (2005) 36 Cal.4th 1284 (*Altus Finance*) is similarly unpersuasive. In *Altus Finance*,

the Supreme Court held that, under applicable Insurance Code provisions, when the Insurance Commissioner is acting as conservator of an insolvent insurance company, the Commissioner has the exclusive right to protect the interests of individual policyholders and creditors. (*Id.* at pp. 1303–1305.) In that context, the Attorney General may not seek restitution for the benefit of creditors under the UCL "without trespassing on the Commissioner's role." (*Altus Finance,* at p. 1306; see *id.* at pp. 1303–1304, 1307.) In contrast, the Insurance Code does not preclude the Attorney General in a UCL action from pursuing public injunctive relief or civil penalties payable to the state. (*Altus Finance,* at pp. 1307–1308.)

The *Altus Finance* court explained: "It is true that the Attorney General is the state's chief law enforcement officer, and that restitution may have a collateral law enforcement effect, punishing the wrongdoer against whom restitution is sought. But the primary purpose of the Attorney General's attempt at restitution is to recover lost property on behalf of an insolvent insurer's creditors and policyholders. As such, he seeks to perform an action that is quintessentially within the scope of the Commissioner's power as conservator and trustee of the insolvent company." (*Altus Finance, supra,* 36 Cal.4th at p. 1305.) In this case, by contrast, there is no conflict between spheres of authority conferred on different public officers. Nor is there anything in the governing statutory text that we might compare to the limit on law enforcement power involved in *Altus Finance*. While that case involved an Insurance Code provision that established an "express limit" on the authority of the Attorney General to seek restitution (*Altus Finance, supra,* 36 Cal.4th at p. 1303), there is no comparable provision here that limits the relief obtainable by the People under the UCL, and there is nothing

that persuades us the available types of relief should be treated differently for purposes of the equitable estoppel analysis.

## C. *Other Issues: Defendants' Requests for Orders Staying or Striking Portions of These Actions*

### 1. The Stay Requests

Since we conclude there is no basis to compel arbitration of any of the People's or the Labor Commissioner's claims or requests for relief, we need not address Uber's and Lyft's arguments that, if some claims were compelled to arbitration, the other portions of these actions (the portions that are not arbitrable) should be stayed pending completion of the individual arbitrations.

### 2. Lyft's Motion to Strike

As noted, Uber's and Lyft's motions to compel arbitration included alternative requests that the trial court strike plaintiffs' complaints to the extent they sought restitution and certain other relief. In its order denying the motions to compel, the trial court denied the alternative motions to strike.

Lyft renews its request on appeal,[15] arguing briefly that, if this court does not compel arbitration, it should "strike the driver-specific remedies that are subject to arbitration," to "avoid creating a conflict with the FAA," because such remedies are arbitrable as between Lyft and its drivers. Even assuming the denial of Lyft's motion to strike is reviewable in this appeal under Code of Civil Procedure section 1294.2[16] (which the People dispute), we

---

[15] Uber does not challenge the denial of its motion to strike.

[16] Code of Civil Procedure section 1294.2 provides in part that, "[u]pon an appeal from" an order denying a motion to compel arbitration, "the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party."

find no basis to strike the assertedly "preempted" remedies.  For the reasons we discussed in part II.B.1, *ante*, the People's and the Labor Commissioner's requests for judicial relief, including victim-specific relief, are not preempted.

## III. DISPOSITION

The order denying Uber's and Lyft's motions to compel arbitration of, and to stay, the People's and the Labor Commissioner's actions is affirmed. The People and the Labor Commissioner shall recover their costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
FINEMAN, J.*

---

* Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:      Superior Court of California, City & County of San Francisco

Trial Judge:      Hon. Ethan P. Schulman

Counsel:      Keker, Van Nest & Peters, Rachael E. Meny, R. James Slaughter; Munger, Tolles & Olson, Rohit K. Singla, Jeffrey Y. Wu, Jennifer L. Bryant and Benjamin G. Barokh for Defendant and Appellant Lyft, Inc.

Gibson, Dunn & Crutcher, Theane Evangelis, Blaine H. Evanson, Heather L. Richardson and Alexander N. Harris for Defendants and Appellants Uber Technologies, Inc., Raiser-CA, LLC, Uber-USA, LLC, and Portier, LLC.

David M. Balter, Miles E. Locker, Alec L. Segarich and M. Colleen Ryan for Plaintiff and Respondent Lilia García-Brower.

Rob Bonta, Attorney General, Satoshi Yanai, Assistant Attorney General, Joanna Hull, Lillian Tabe, Kwi Choi, Katherine Read and Mana Barari, Deputy Attorneys General; Hydee Feldstein Soto, City Attorney (Los Angeles), Michael Bostrom, Assistant City Attorney, Joshua Crowell, Deputy City Attorney; Mara W. Elliott, City Attorney (San Diego), Mark Ankcorn, Chief Deputy City Attorney, Kevin King and Julie Rau, Deputy City Attorneys; David Chiu, City Attorney (San Francisco), Yvonne R. Meré, Chief Deputy City Attorney, Sara J. Eisenberg, Chief of Complex and Affirmative Litigation, Matthew D. Goldberg, Chief Worker Protection Attorney, and Molly J. Alarcon, Deputy City Attorney, for Plaintiff and Respondent the People.